ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JOSE RICARDO SARABIA-MARTINEZ,

                    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER,
DENVER SHERIFF'S DEPARTMENT,
DENVER COUNTY SHERIFF FIRMAN,
DENVER HEALTH AND HOSPITAL AUTHORITY,
CHRISTIAN STOB, M.D.

                    Defendants.

```
FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 28 2018

JEFFREY P. COLWELL
CLERK
```

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT AND JURY DEMAND

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Jose Ricardo Sarabia-Martinez, DOC#174519, P.O. Box 6000, Sterling, CO 80751
(Name, prisoner identification number, and complete mailing address)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

| | |
|---|---|
| ____ | Pretrial detainee |
| ____ | Civilly committed detainee |
| ____ | Immigration detainee |
| _X_ | Convicted and sentenced state prisoner (*but at the time I was a pretrial detainee*) |
| ____ | Convicted and sentenced federal prisoner |
| ____ | Other: (*Please explain*) _____ |

## B.   DEFENDANT(S) INFORMATION

Defendant 1:   Denver Sheriff's Department, 490 W. Colfax Ave., Denver, 80204

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*). Briefly explain:

The Denver Sheriff's Department was acting under Color of State law while

holding me as a pretrial detainee in the Denver Downtown Detention Center.

Defendant 1 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 2:   The City and County of Denver, 490 W. Colfax Ave. Denver CO 80204

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*). Briefly explain:

The City and County of Denver is a State entity incorporated as a

Municipality.  At all times it owned and operated the Detention Center where

Plaintiff was held as a detainee.

Defendant 2 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 3:   Denver Sheriff Firman, 490 W. Colfax Ave., Denver CO 80204

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*). Briefly explain:

2

The Defendant was the head Sheriff of Denver County. In this capacity this Sheriff authority under Colorado law to run the Denver Downtown Detention Center where the Plaintiff was confined.

Defendant 3 is being sued in his/her  X individual and/or  X official capacity.

Defendant 4:   Denver Health and Hospital Authority, 777 Bannock St., Denver, CO 80204

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  X Yes      No (*check one*). Briefly explain:

The Denver Health and Hospital Authority is a Subdivision of the State of Colorado, and it was responsible for providing the Denver Downtown Detention Center detainees with health care.

Defendant 4 is being sued in his/her  X individual and/or  X official capacity.

**C.     JURISDICTION**                     **[See attached: Defendant 5]**

*Indicate the federal legal basis for your claim(s): (check all that apply)*

  X    42 U.S.C. § 1983 (state, county, and municipal defendants)

____    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

____    Other: *(please identify)* _____


**D.     STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

Construe liberally per Haines v. Kerner, 404 U.S. 519 (1972).

– ATTACHMENT –

**B.     DEFENDANT(S) INFORMATION**

Defendant 5:

Christian Stob, M.D., 490 W. Colfax Ave., Denver, CO 80204

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?
                    X  Yes ___ No (check one). Briefly explain:

     Dr. Stob is employed by the Denver Health and Hospital

Authority and was responsible for providing the Denver Downtown

Detention Center detainees with health care.

Defendant 5 is being sued in his  X  individual and/or

 X  official capacity.

D.    **STATEMENT OF THE CLAIMS**

**SECOND CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**Deliberately Indifferent Policies**

**[Plaintiff Sarabia-Martinez against the City and County of Denver, Denver Sheriff's Department, and Denver Health and Hospital Authority]**

39.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

40.    42 U.S.C. § 1983 provides that:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceedings for redress ...

41.    Mr. Sarabia-Martinez was a pre-trial detainee.

42.    As a pre-trial detainee, Mr. Sarabia-Martinez was protected from deliberate indifference to his known serious medical needs by the Fourteenth Amendment.

43.    Under the Fourteenth Amendment, Mr. Sarabia-Martinez is also protected from conduct that is not rationally related to a legitimate non-punitive governmental purpose or actions that appear excessive in relation to the purpose under Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015).

44.    To the extent he was under any conviction, Mr. Sarabia-Martinez was also protected from deliberate indifference to his known serious medical needs by the Eighth Amendment.

45.    The City and County of Denver (CCD), Denver Sheriff's Department (DSD), and Denver Health and Hospital Authority (DHHA) Defendants, at all times relevant hereto, were acting under color of state law, as the functional equivalent of a municipality providing medical care to inmates.

46.   (CCD) (DSD) (DHHA) Defendants, are liable for their deliberately indifferent policies, practices, habits, customs and widespread usages as described with particularity above with respect to the serious medical needs of inmates like Mr. Sarabia-Martinez and their deliberately indifferent failures in training and supervising their employees, including individual Defendant Dr. Stob. These Defendants have a widespread pattern of deliberately indifferent medical care in DSD where they provide medical care, which includes: refusing to let inmates be seen by higher level medical providers, even when obviously necessary to prevent serious injury or death: choosing to not have their medical providers routinely see inmates that have been removed fro general population due to sickness, in part to save money; refusing to allow inmates access to needed medical evaluation; allowing nurses and doctors to rely on nurses to diagnose outside their nursing scope; and, a widespread custom and tolerated practice and habit of treating all inmate or detainee illnesses as fake or not serious until an inmate/detainee can prove otherwise, often to save money on providers and testing.[1]

_____

1 Plaintiff intends to argue that the 10th Circuit case Smedley v. Corr. Corp. of Am., 175 F.App'x 943, 946 (10th Cir. 2005) was wrongly decided and that respondeat superior should apply to private entities in § 1983 actions. See Shields v. Ill. Dep't of Corr., 746 F.3d 782, 795 (7th Cir. 2014)("For all of these reasons, a new approach may be needed for whether corporations should be insulated from respondeat superior liability under § 1983. Since prisons and prison medical services are increasingly being contracted out to private parties, reducing private employers' incentives to prevent their employees from violating inmates' constitutional rights raises serious concerns. Nothing in the Supreme Court's jurisprudence of the relevant circuit court decisions provides a sufficiently compelling reason to disregard the important policy considerations underpinning the doctrine of respondeat superior. And in a world of increasingly privatized state services, the doctrine could help protect people from tortious deprivations of their constitutional right.")

47.    CCD, DSD, and DHHA Defendants are liable for their deliberately indifferent policies, practices, habits, customs, and widespread usages as described with particularity above with respect to the serious medical needs of inmates like Mr. Sarabia-Martinez, and their deliberately indifferent failures in training and supervising their employees, including individual Defendants Dr. Christian Stob and Denver County Sheriff Firman.

48.    The City and County of Denver is also non-delegably liable for the deliberately indifferent policies, training, and supervision of the private companies it contracts with to provide medical care at the Denver Downtown Detention Center (DDDC), including DSD, DHHA Defendants and individual Defendants Dr. Christian Stob and Denver County Sheriff Firman.

49.    The entity Defendants' deliberately indifferent policies, failures to train and/or supervise, were the moving forces in the violations of Mr. Sarabia-Martinez' contitutional rights.

50.    The entity Defendants were on notice that their deliberate indifference would result in a pattern of not providing desperately needed care to inmates with serious medical needs, causing injury and death.

51.    The failures in training and supervision were so obvious that the failure to provide the same was deliberately indifferent to the rights of the relevant public, and a moving force in the complained of injuries and near-death experience of Mr. Sarabia-Martinez.

52.    The entity Defendants, through policy makers and final delegated decision-makers, ratified their employees' and subordinates' unconstitutional conduct by approving their decisions and the basis

for them, including ongoing toleration of the known widespread culture of ignoring inmates' serious medical conditions, in part to save money.

53.   The entity Defendants' policies, practices, habits, customs, widespread usages, and lack of training and supervision that resulted in the failure to provide proper medical care to treat Mr. Sarabia-Martinez' known serious medical needs were not rationally related to a legitimate nonpunitive governmental purpose, or were excessive in relation to that purpose.

54.   As a proximate result of Defendants' unlawful conduct, Plaintiff Sarabia-Martinez has suffered injuries and losses, including the very real near-death of Mr. Sarabia-Martinez, entitling him to recover compensatory and special damages, including for loss of constitutional rights, loss of enjoyment of life, and his horrific and terrifying pain and suffering during and leading up to to near-death experience and other special damages, all in amounts to be proven at trial.

55.   Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

56.   Plaintiff is entitled to punitive damages against CCD, DSD, DHHA, Denver County Sheriff Firman, and Dr. Christian Stob, in their individual and official capacities, in that their actions were taken maliciously, willfully or with reckless or wanton disregard for the constitutional rights of Plaintiff.

D.    **STATEMENT OF THE CLAIMS**

**THIRD CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**Cruel and Unusual Punishment**
**Defendants Willful, Malicious Conduct Dangerously and Recklessly Exposed Mr. Sarabia-Martinez to an Unjustifiable Health Risk That Resulted in His Belief that He Would Die, Horrific and Protracted Pain and Suffering, and Very Nearly Caused His Death in Violation of His Eighth and Fourteenth Amendment Protections Guaranteed By the United States Constitution**

**[Plaintiff Sarabia-Martinez against the City and County of Denver, Denver Sheriff's Department, Denver Health and Hospital Authority, Denver County Sheriff Firman, and Christian Stob, M.D.]**

57.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

58.  42 U.S.C. § 1983 provides that:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceedings for redress ...

59.  The Eighth Amendment to the United States Constitution provides that:

> Excessive bail shall not be required, nor excessive fines imposed, <u>nor cruel and unusual punishments inflicted.</u> (emphasis added)

60.  The Defendants the City and County of Denver contracted with the Denver Health and Hospital Authority, with Dr. Christian Stob, to provide medical care and health services to inmates at the Denver Downtown Detention Center for the Denver County Sheriff's Department, on behalf of Denver Sheriff Firman.

61.  To the extent that he was a pre-trial detainee, Mr. Sarabia-Martinez was protected from deliberate indifference to his known

serious medical needs by the Eighth Amendment.

62.  At all times relevant to this action, Mr. Sarabia-Martinez was under the medical care and responsibility of Defendants hereto.

63.  Defendant Stob, nurses and other health care providers had a duty to provide reasonable medical care and treatment to the Detainees at the Denver Sheriff Department's Detention Center, including Mr. Sarabia-Martinez.

64.  Defendant DHHA, and Dr. Stob had the duty to exercise reasonable care in the training and supervision of their employees and/or other subordinate staff members.

65.  These duties of care are informed by state law, under C.R.S. § 16-3-401, "Prisoners under arrest or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment."  The provision of adequate medical treatment and humane care is a statutory obligation.

66.  Through their actions and omissions, Defendants DHHA, Dr. Stob and other care providers breach their duty of care when they knowingly failed to properly assess, monitor, treat and care for Mr. Srabia-Martinez, dispite that fact that he was in obvious need of immediate medical attention.

67.  Defedabts DHHA, Dr. Stob had doctor-patient or nurse-patient relationship with Mr. Sarabia-Martinez at all relevant times and were acting within the scope of their employment throughout the duration of these relationships.

68.  With respect to their care and treatment of Mr. Sarabia-Martinez, Defendants DHHA, Dr. Stob and nurses owed him a duty to excercise the degree of care, skill, caution, diligence, and foresight exercised by and expected of medical personal

in similar situations. Defendant DHHA, Stob and nurses breached their respective standards of care and were negligent in failing to properly assess, monitor, treat, and care for Mr. Sarabia-Martinez.

69.   As directed and proximate result of Defendants DHHA, Dr. Stob and nurses having breach their duty to provide reasonable medical care and treatment to Mr. Sarabia-Martinez, he suffered significant physical and mental pain and suffering, and other damages and potential death.

70.   DHHA, Dr. Stob and nurses, Defendants are vicariously liable for the negligent acts and omissions by their agents and/or employees, including, but not limited to, those named individually herein, and those directly liable for their own negligent failures in training, policies, and practices.

71.   DHHA, DR. Stob, and nurse Defendants are also directly liable as they breach their duty to exercise reasonable care in the training and supervision of their employees and agents in a manner that provided the detainees under their care with reasonable medical care and treatment.

72.   DHHA, Dr. Stob and nurses Defendants knew or should have known that the lack of supervision, experience, and training among their employees and agents was likely to harm Denver Sheriff's detainees in need of medical care, including Mr. Sarabia-Martinez.

73.   In failing to exercise reasonable care in the training and supervision of their employees and agents, as it relates to their providing reasonable medical care and treatment, DHHA, Dr. Stob and nurse Defendants were negligent and proximately caused Mr. Sarabia-Martinez' near death, pain and suffering.

74.  The negligent acts and omissions by these Defendants were a substantial and significant, contributing proximate cause of Mr. Sarabia-Martinez pain and suffering, and near death.

75.  As a result of the complained of negligence, Plaintiff hereto has suffered damages included, inter alia, pain and suffering, upset, grief, loss of society and compainionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Statute.

76.  Plaintiff suffered and continues to suffer economic and non-economic damages due to Defendants' negligent conduct toward the Plaintiff, including, but not limited to, financial losses due to the financial benifits he would have reasonably been expected to recieve in the time he has been incarcerated and non-ecobimic damages for brief, loss of companionship, impairment in the quality of his family's lives, inconvenience, pain and suffering, and extreme emotional distress. Plaintiff hereto is therefore entitle to general and compensatory damages for such pain and suffering and emotional distress and to special damages.

77.  CCD, DSD, DHHA, Sheriff Firman, and Dr. Stob Defendants' conduct was attended by circumstances of malice, or willful and wanton conduct, which Defendants must realized was dangerous, or that was done recklessly, without regards to the consequences to Mr. Sarabia-Martinez

78.  Defendants consciously disregarded a substantial and unjustifiable risk that they knew or should have known would cause the death of another.

**CLAIM ONE:**     **The Defendants Were Deliberately Indifferent to the Plaintiff's Serious Medical Needs in Violation of the Eighth and Fourteenth Amendments to the United States Constitution.**

**Supporting facts:**

1.     At all times relevant to this Complaint Mr. Sarabia-Martinez was a pre-trial detainee held in the Denver Downtown Detention Center. The Detention Center was, at all times, owned and operated by the City and County of Denver -a Colorado municipality.

2.     As a pre-trial detainee, Mr. Sarabia-Martinez was entitled to be protected from deliberate indifference to his known serious medical needs by the Fourteenth Amendment.

3.     Under the Fourteen Amendment, Mr. Sarabia-Martinez was also protected from conduct that is not rationally related to a legitimate, non-punitive governmental purpose or actions that appear excessive in relation to that purpose under *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473 (2015).

4.     Mr. Sarabia-Martinez had been sick, and appeared very ill, since the beginning of February 2016.

5.     At all times relevant to this Complaint, the medical staff in the Denver Downtown Detention Center were employees or contract workers for the Denver Health and Hospital Authority (DHHA), which is a political subdivision of the State of Colorado. Additionally, at all times, Defendant Stob was a physician employed by the DHHA to work in the Detention Center.

6.     All references to "MR" below are references to Mr. Sarabia-Martinez' medical records.

7.     On September 15, 2015, Mr. Sarabia-Martinez notified the medical staff at the Detention Center that he fell in the shower on Saturday (September 12, 2015) and injured his back. He complained of nerve pain from the lower back radiating down the legs (MR 21). He was

again prescribed 800mg Motrin, twice a day for 10 days, a non-steroidal anti-informatory

(NSAID) for pain (MR 22). The pain became worse and Voltaren/Diclofenac (75mg Hs), a

NSAID, was prescribed (MR 23-25). Subsequently, he was put on flexeril/Cyclobenzaprine, a

muscle relaxant, (MR 24-25) after the pain would not subside (MR 26-27) but this medication

was ineffective at reducing the pain. At a medical appointment on November 4, 2015, Mr.

Sarabia-Martinez was also prescribed Elavil 75mg HS, a medication used to treat nerve pain (MR

25-26).

       8.      From September of 2015 through January of 2016, Mr. Sarabia-Martinez

submitted several medical "kites" (requests for treatment) to the Denver Downtown Detention

Center for chronic back pain resulting from the slip and fall in the shower. On January 19. 2016,

after several pharmaceutical interventions to manage the pain were ineffective, the attending

physician, Defendant Stob, prescribed Mobic 7.5mg, orally, twice per day (MR 40). Defendant

Stob knew that one of the serious possible side effects of Mobic was an allergic reaction

manifesting as infections, blurry vision, mental confusion, inability to concentrate, dizziness, skin

rashes, stomach bleeding, nausea, upper stomach pain, itching, fatigue, feeling light-headed, skin

pain, weakness, slurred speech, double vision, sores inside the mouth and on body, swollen of

hand and genitals, and weight loss

       9.      Dr. Stob despite knowing this, he did not notify Mr. Sarabia-Martinez about those

possible symptoms to that he could monitor his own reactions to the medication. The prescribing

information for Mobic (of which the Defendant was aware) states the following:

> *"NSAID, including meloxicam, can cause serious skin reactions*
> *such as exfoliative <u>dermatitis, Stevens-Johnson Syndrome (SJS)</u>,*
> *and toxic <u>epidermal</u> necrolysis (TEN), which can be fatal. These*
> *serious events may occur without warning. Inform patients about*
> *the signs and symptoms of serious skin reactions, and to*
> *discontinue the use of MOBIC at the first appearance of skin rash*

> *or any other sign of hypersensitivity. MOBIC is contraindicated in patients with previous skin reaction to NSAIDs"*

10.     Within a couple weeks of being prescribed the Mobic, Mr. Sarabia-Martinez told Defendant Stob that he did not want to continue taking the medications as they were not helping with the pain and he was experiencing distressing side-effects, like mental confusion, and the ability to concentrate and focus. During this same period of time, Mr. Sarabia-Martinez requested numerous times to have a MRI done in order to identify the source of the back pain and to have a specific treatment plan put in place (MR 22-28).

11.     Prior to Mr. Sarabia-Martinez' incarceration at the Denver Downtown Detention Center he was a very healthy, well-nourished 33 year-old-male with no medical history of illnesses or surgeries.

12.     On February 4, 2016, 16 days after starting the administration of Mobic, Mr. Sarabia-Martinez submitted a Medical Kite complaining of dermatological issues (MR 43). He was seen by the DHHA staff that same day who notated in his medical records that he had skin rashes on his right arm, right lower extremities, including right, thigh, and on the right side of his face. Defendant Stob, as the attending physician, was aware of this medical report and Mr. Sarabia-Martinez' symptoms, which were the classic beginning symptoms of an allergic reaction to the medication he'd prescribed Mr. Sarabia-Martinez for the back pain. Despite being fully aware that the symptoms indicated an allergic reaction to medication, and that antibiotics had no effect on allergic reactions, he started Mr. Sarabia-Martinez on doxycycline, an antibiotic, 100mg for 10 days (MR 41-43).

13.     From February 4, 2016 to February 17, 2016, Mr. Sarabia-Martinez' condition continued to worsen with further lesions, rashes, wounds in the mouth and palms of hand, small

6

lacerations on fingers, and a spreading infection in spite of daily soaks, treatments, and antibiotics (MR 41-46). In addition to the rashes, sores, open wounds, infections, etc. Mr. Sarabia-Martinez had lost a significant amount of weight in a very short period of time. From January 13, 2016 to February 5, 2016, Mr. Sarabia-Martinez went from weighting 218 to 180lbs, representing a 38 lb. drop in weight in 17 days (MR 41).

14.      On February 16, 2016, Mr. Sarabia-Martinez was again seen by Defendant Stob, who saw that Mr. Sarabia-Martinez had multiple open sores on the body ranging from the size of a dime to a quarter, rashes, and cracking skin. Based on Defendant Stob's medical training, and his previous awareness of the skin rashes that arose right after prescribing the back pain medication, these were obvious signs of a continued, serious allergic reaction to the medication. Instead of taking any steps to identify and discontinue the medication which was causing the allergic reaction, Defendant Stob  prescribed Mr. Sarabia-Martinez Bactrim, another antibiotic, Eucerin cream, and daily hand soaks (MR 47).  Defendant Stob knew that these treatments would be completely and utterly ineffective against the allergic reaction.   Defendant Stob made no changes to the prescription medication he was giving Mr. Sarabia-Martinez to manage the back pain (MR 40, 47).

15.      On March 3, 2016, a DHHA nurse notated in Mr. Sarabia-Martinez' DHHA medical file that Mr. Sarabia-Martinez was suffering from an allergic reaction. In response, Defendant Stob prescribed Mr. Sarabia-Martinez with Benadryl (25-50mg), and put him on a schedule to see dermatology at the Denver Health. Though the DHHA staff, and Defendant Stob, knew the allergic reaction was very serious, potentially life-threatening, and long-progressed, they made no attempt to get Mr. Sarabia-Martnez seen immediately.  Instead, they set the appointment with dermatology for May 10, 2016, (MR48).

7

16.     By March 22, 2016 Mr. Sarabia-Martinez' health continue to deteriorate rapidly and the open sores on his hand developed a life-threatening infection. He was immediately transferred from the Downtown Detention Center Medical Facility to the Denver Health Emergency Department (MR 51-53). He was admitted to the hospital by the Emergency Department physician and immediately scheduled in the operating room for a Surgical Fistulation (I and D) (MR52-55). In all, he remained in the hospital for a total of 4 days after having undergone emergency surgery for the life threatening infection (MR 51-58). At the time of his admission to Denver Health Mr. Sarbia-Martinez was taking the following prescription medication: Mobic, Elavil, Benadryl, Doxycydine and Tylenol. Mr Sarabia-Martinez was discharged from the hospital to the Downtown Detention Center Medical Facility medical staff for follow-up care (MR 58).

17.     On April 10, 2016, the Downtown Detention Center medical staff again met with Mr. Sarabia-Martinez to discuss his chronic back pain. He was schedule for an appointment with Dr. Stob and the prescription Mobic was discontinued (MR 59).

18.     On April 26, 2016, Mr. Sarabia-Martinez met with Defendant Stob about his back pain to determine the treatment plan and for follow up regarding his dermatological problems. The defendant Dr. Stob notes indicate that the hand wounds and skin rash were "doing well" and that the patient back paint improved. Dr. Stob, despite knowing about the allergic reaction to the medication and the life-threatening result, Defendant Stob once again started Mr. Sarabia-Martinez on Mobic 7.5mg and Elavil 50mg (MR 61).

19.     By May 17, 2016, Mr. Sarabia-Martinez presented with the return of scabby red sores on his arms, legs, and groin similar to the previous skin infections. The medical records reflects multiple round sores all over the Mr. Sarabia-Martinez' body and a red, inflamed, and

8

moist groin (MR 62). The next day Mr. Sarabia-Martinez exhibited pain, redness, itching in the axilla and groin as well as streaking up the arm, a sign of infection. Once again, he was transferred to the Denver Health Emergency Department (MR 62-63). The Denver Health medical record reflected "*no current facility-administered medication on file prior to encounter*" and "*No current outpatient prescriptions on file prior to encounter,*" even though Mr. Sarabia-Martinez was taking, on a daily basis, Mobic as prescribed by Dr. Stob (MR 63-68). He was discharged from the hospital and returned to the Downtown Detention Center with a diagnosis of fungal infection, rash, abscess on third digit, and a red skin infection in the groin. He was given a prescription for Lamisil 1% (Antifungal cream) (MR 80). In spite of multiple rounds of Doxycycline and other antibiotics Mr. Sarabia-Martinez exhibited very little, to no improvement, as noted in the medical records from May 17, 2016 through July 14, 2016 (MR 68-84).

20.     On his own, Mr. Sarabia-Martinez finally realized that the Mobic he'd been prescribed was responsible for his deteriorating health. In September of 2016, he completely refused the Mobic that was being prescribed to him. His physical condition improved shortly after stopping the medication, as it did when the medication was discontinued on April 10, 2016 for those few short weeks (MR 59).

21.     On September 13, 2016, a year after the Mr. Sarabia-Martinez slipped and injured his back, an MRI of the Lumber Spine was completed revealing a swollen/slipped disk in his lower spine and he was treated with ongoing, outpatient, physical therapy.

22.     At all times relevant to this Complaint Defendant Stob knew that Mr. Sarabia-Martinez had a clearly established right to protection from deliberate indifference to his serious medical needs.

23.     When Defendant Stob was informed that Mr. Sarabia-Martinez exhibited classic

9

signs of an allergic reaction upon being prescribed Mobic, he knew that it was likely Mr. Sarabia-Martinez was suffering from an allergic reaction, and that the allergic reaction to the medication could be life-threatening. He consciously chose to disregard that risk by not seeking to confirm that the symptoms were from the medication, and by instead treating the symptoms with antibiotics—which would not stop the allergic reaction. Defendant Stob knew that the only real way to stop the allergic reaction was to discontinue to medication which was causing it.

24.     Later on, when the rashes developed into large open sores and cracked skin, Defendant Stob knew that the allergic reaction was in fact becoming life-threatening. Yet, despite having the authority as Mr. Sarabia-Martinez' attending physician, he made no effort to have Mr. Sarabia-Martinez immediately seen by a dermatologist. He also made no attempt to find which medication was causing the allergic reaction and to stop it, though from his training such medical action was well within his abilities. He knew that by not taking these actions he was risking Mr. Sarabia-Martinez' life.

25.     After Mr. Sarabia-Martinez returned from his emergency medical stay and treatment in Denver Health, Defendant Stob was fully aware that what Mr. Sarabia-Martinez suffered from was an allergic reaction to medication (most likely the Mobic). He was aware that when Mr. Sarabia-Martinez ceased taking it his allergic symptoms decreased. Yet, he once again prescribed Mobic—recklessly disregarding the risk that the allergic reaction could continue and threaten Mr. Sarabia-Martinez' life again.

26.     Defendant Stob's actions and inactions were the proximate cause of Mr. Sarabia-Martinez' injuries and life-threatening infections. Not only were the symptoms painful, they severely damaged Mr. Sarabia-Martinez' skin and terrified him. He really thought he might die, and was scared because he did not know what was happening to him or why. If he had been

10

informed about possible side effects he would have noticed much earlier that what he was experiencing was related to the Mobic and he would have stopped taking it. The terrible symptoms lasted eight months—an excessively long period of time considering the source. All of this as traumatic for Mr. Sarabia-Martinez.

27.     Dr. Stob knew of and disregarded the excessive risk associated with Mr. Sarabia-Martinez' serious and life-treating medical condition and nonetheless, with deliberate indifference, decided not to evaluate Mr. Sarabia-Martinez, obtain for him obviously needed higher level medical evaluation, including, but not limited to a back x-ray, or otherwise provide him with obviously needed orders and tests. He did so despite being expressly aware of plaintiff's known serious medical needs, obvious need for the same, and recklessly disregarding a substantial risk of physical harm and potential death to plaintiff.

28.     When Mr. Sarabia-Martinez, and others acting on his behalf, alerted each individual defendant to his need for medical assistance, defendants acted with deliberate indifference to his readily apparent need for medical attention and his constitutional rights by refusing to obtain and provide the appropriate medical treatment.

29.     These defendants acted with deliberately indifferent to Mr. Sarabia-Martinez' deteriorating condition, including but not limited to, side effects of Mobic such as infections, blurry vision, mental confusion, inability to concentrate, dizziness, skin rashes, stomach bleeding, nausea, upper stomach pain, itching, fatigue, feeling light-headed, skin pain, weakness, slurred speech, double vision, sores inside the mouth and on body, swollen of hand and genitals, and weight loss.

30.     The individual nurse defendants and Dr. Stob's failure to provide proper medical care to treat Mr. Sarabia-Martinez' known serious medical needs was not rationally related to a

11

legitimate, non-punitive governmental purpose.

31.     All of the deliberately indifferent acts of each individual defendant were conducted within the scope of their official duties and employment.

32.     The acts or omissions of each individual defendant were the legal and proximate cause of Mr. Sarabia-Martinez' deterioration.

33.     As a direct result of defendants' unlawful conduct, Mr. Sarabia-Martinez suffered extreme physical and mental pain and suffering for months, including the violent pain and trauma he experienced at the moment he was taken to the DHHA Emergency Room.

34.     These intentional actions and inactions of each individual defendant as described herein, intentionally deprived Mr. Sarabia_Martinez of due process and of rights, privileges and liberties secured by the constitution of the United States of America causing him damages.

35.     Additionally, this eight month period was in the midst of Mr. Sarabia-Martinez' criminal proceedings for which he was being detained.   Due to his physical condition he was unable to fully participate in his criminal proceedings.  He could not concentrate on his case and effectively work with his attorneys due to mental confusion as well as other side effects he suffered from.

36.     As a proximate result of the individual defendants' unlawful conduct, Plaintiff has suffered injuries and losses, entitling Mr. Sarabia-Martinez to recover compensatory and special damages, including loss of constitutional rights, loss of enjoyment of life, his herein described horrific and terrifying pain, and suffering during the eight months in which Plaintiff was unable to assist in his criminal defense in his two trials, causing him permanent loss of freedom, loss of earnings and earnings capacity for the expected productive working time during his incarceration. As a result of this, and other special damages, all in amount to be proven at trial.

37.     Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C.  1983, per-judgment interest, and cost allowable by federal law.

38.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against individual defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**[See attached: D.  Statement of Claim Two; and, of Claim Three]**

**E.     PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  _X_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name of defendant:                              Denver Sheriff Department, et al

Docket number and court:                     17CV414

Claims raised:                                       Malpractice

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?)  Unknown

Reasons for dismissal, if dismissed:

Result on appeal, if appealed:

Name of defendant:                              Abdul Munir Masad

Docket number and court:                     16CV15

Claims raised:                                       Unjust Enrichment; Breach of Contract

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?)    Default Judgment in favor of Sarabia-Martinez

Reasons for dismissal, if dismissed:    _____

Result on appeal, if appealed:    _____

Name of defendant:    M&M Construction, LLC

Docket number and court:    17CV249

Claims raised:    Unjust Enrichment; Breach of Contract

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?)    Judgment in favor of Defendants

Reasons for dismissal, if dismissed:    _____

Result on appeal, if appealed:    Pending

Name of defendant:    Pablo Sarabia-Martinez

Docket number and court:    16CV140

Claims raised:    Theft; Unjust Enrichment

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?)    Judgment in favor of Defendant

Reasons for dismissal, if dismissed:    _____

Result on appeal, if appealed:    Pending

Name of defendant:    Khalid Jbili

Docket number and court:    16CV546

Claims raised: ___Malpractice; Negligence_____

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?) __Dismissed_____

Reasons for dismissal, if dismissed: ___Motion to Dismiss - Granted_____

Result on appeal, if appealed: ___Pending_____

Name of defendant: ___Pablo Sarabia-Martinez_____

Docket number and court: ___15CV31035_____

Claims raised: ___Theft; Unjust Enrichment_____

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?) __Judgment in favor of Defendant____

Reasons for dismissal, if dismissed: _____

Result on appeal, if appealed: ___Affirmed_____

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?
     _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

     _X_ Yes ___ No (*check one*)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST*

*FOR RELIEF."*

The Plaintiff requests the following relief from the Defendants, jointly and severally:

a)  All appropriate relief at law and equity;

b)  Economic losses on all claims allowed by law;

c)  Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

d)  Punitive damages on all claims allowed by law and in an to be determined at trial;

e)  Attorney fees and cost associated with this action, including expert witness fees on all claims allowed by law;

f)  Pre-and post-judgment interest at the highest lawful rate; and

g)  Any further relief that this court deems just and proper.

**PAINTIFF RESPECTFULLY REQUESTS TRIAL BY JURY.**

**H.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____        8-24-18
Jose Ricardo Sarabia-Martinez                      Date

16

## CERTIFICATE OF REVIEW

This is to certify that I, Jose Ricardo Sarabia-Martinez, has conferred, pursuant to Colorado statutes, with a person who has extensive expertise in the areas of alleged negligence and deliberate indifference to serious medical needs, and that this professional has reviewed the known facts, including such records, documents, and other material as he has found to be relevant to the complaint allegations of negligent acts and omission, and has concluded that the filing of these claims do not lack substantial justification and in fact are substantially meritorious and involve clear violations of the standards of care involved.

/s/ *Jose ricardo Sarabia-Martinez*
Jose Ricardo Sarabia-Martinez

[NOTE:]  I have attached Dr. Mark Levin's written Expert Opinion and Curriculum Vitae to this Certificate of Review as further evidence of my statements.